Good morning, or yes, still good morning, and may it please the Court, I'm Elizabeth Newman representing Mr. Osazuwa. Your Honors, of the three issues in this appeal, two of them combined to undermine Mr. Osazuwa's credibility with the jury. And I would like to focus at least at first on the first one of those, which is the cross-examination issue. The government – the thrust of the government's argument is that when the defense asked, what was your sentence on that prior offense, that opened the door. But I think it's important to piece out whether – well, our position, of course, is that it didn't open the door, but that if it did, what it might have opened the door to. And I'd like to note preliminarily that the government never tried to litigate this issue before the trial began. It never tried to litigate this issue before Mr. Osazuwa testified, when it realized that he was going to do so, and it never objected to the question from the defense when the defense posed it to Mr. Osazuwa during its – during the direct testimony. But I think it's also – it's important to tease out that when the defense asked this question, or these two questions, do you – what was your conviction and what was your sentence, the government has never pretended to have any or never claimed to have any problem with the question about the conviction, only the question about the sentence. And yet all of the information that it sought to bring in was about the conviction and not about the sentence. And if this opened the door – and again, our position is that it did not – but if this opened the door, then under the Court's case law, the government was required to fight that or open the door or, that is to say, walk through the door onto the same ground, onto the same issue, the same territory, which would be the territory of what was the sentence. And so the – the government, of course, did not do that. It asked question after question over objection after objection, and after a long colloquy and sort of hurried overnight briefing about the conviction itself. And I would submit that there's only really one goal of that kind of questioning, and that's to destroy Ms. Strazzazua's credibility with the jury in this case in which the only issue was who was the jury going to believe, Ms. Strazzazua or Officer Medina, given that there were no video cameras and no other witnesses to what occurred within that jail cell. I would like to – to – to – sorry. I would like to talk about how this did not open the door, because under the Court's case law, this was at best an implication, and implications don't open doors. And I would point the Court to the cases of U.S. v. Torrey, U.S. v. Whitworth, U.S. v. Dickens, and U.S. v. Sines. And I think the Torrey case is influentially the clearest. There, the – the issue was whether the defendant had committed an armed bank robbery or an unarmed bank robbery. He – he admitted that the – he had committed the robbery but denied that he had used a gun. And so the only question in the case was, had he had a gun? The agent who searched his house was asked, did you find a gun, and answered no. And the district court ruled that this opened the door to the government's question, isn't it true that you found a gun holster? This Court said no, because you have to keep within the four corners of the question asked, and the question asked was only about what the agent had or had not found. It was not about whether he had also found – I'm sorry, whether or not he had found a gun, not whether he had found a gun holster. In Whitworth, it's the same – it's the same sort of situation. There, the witness testified that the defendant had – the defendant's participation in an espionage ring had been a little bit lackluster. And the government wanted to rebut an inference from that testimony, the inference being that the lackluster participation indicated a lack of commitment to the goals of the espionage. And so it asked whether the witness thought that the defendant had known that the beneficiary of the espionage was the Soviet Union. And this Court said no, implications and inferences don't open doors. You have to stay within the four corners of the question. And so the four corners of the question here were, what was your sentence on that offense? And the answer to that question is an answer that Mr. Osazua gave truthfully, and it's a verifiable fact. His custodial sentence on that offense was one day and nothing more. And so if I understand your argument, it is that if he omitted to mention, let's say, there had been, you know, $5 million of restitution to a certain victim or something like that, which was also part of the sentence, that would have been fair game, but that's about it. Right. If he had been asked about restitution and had shaded it, or if he'd given some sort of – if he'd been asked or had answered in a way that suggested that he hadn't really meant to commit the offense or that there were some sympathetic circumstances that had brought him to that point, that would have opened the door to the facts to some facts of the conviction. Aren't you – I mean, really, I mean, as I understand the argument, that it's – that the government's arguing that responding to the question about the sentence opened the door, that it may have opened the door to questions about the sentence. Yes. But not to all the details of the underlying conviction. Right. Right. So why would he ask a question like that? Well, not having been defense counsel at trial, it's a little hard to say. I mean, I can see where the court is going, but even if he did – even if that question did open the door, then the proper ground to walk onto was questions about the sentence, like, isn't it true that you could have received a sentence of 30 years for that conduct, that being the statutory maximum sentence for bank fraud, which is a minor offense, or if the implication that the government Well, I mean, the implication is if you only got one day, well, it wasn't that bad. You know, it was just a kind of a minor thing. Well, then the district court should have limited that cross-examination to things like, isn't it true that this was not a minor crime?  And if you look at how the government began its cross of misdraws, it actually did begin – it asked several questions about lies that he had told before the defense objected. And so, I mean, you can see that that – I mean, those two or three questions – I mean, our position is that the door was never opened. But if the door was open, those two or three questions were surely sufficient. The ones where they said you lied – essentially you lied to the bank to get money. Right. Right. That would have been enough. Let me ask you another question. I'm sorry. I mean, I could – wouldn't the fact of the prior conviction have been something – the fact and the sentence both would have been something that the prosecutors could have brought out on cross-examination, right? Right. So isn't it likely that the defense attorney wanted to bring it out himself as a strategy, so that – not to have the prosecution undermine his client? Well, I think there are two – I think that's plausible. But I think that the defense also had to explain what Mr. Azazua was doing in a jail cell at the Metropolitan Detention Center on the day that this incident occurred. And to do that, the defense had to explain to the jury that Mr. Azazua had been convicted, that he'd been sentenced, that he'd violated a term of his supervised release, and received a 90-day sentence for that, of which he had three weeks left to serve when this incident occurred. So he brought all of that out? He did bring all of that out, yes, on direct. Pretty much in that sequence. Yeah. Okay. Yeah. Yeah. So, I mean, it's really hard to see what the defense could have done differently in this case, given how – Because the fact was he was in the jail cell. Right. He was in a jail cell, but it wasn't for a violent offense. He had no violent incidents, you know, in his – during his custodial time. He was three weeks from release. Are you going to address the jury question at all? Certainly, Your Honor. I think that the – I think the reason that the courts give discretion to the district court to answer questions that jurors – that jurors pose is – well, I mean, given that discretion presupposes that the district court understands what the jury is actually asking and clarifies it if the court does not understand what the jury is asking. And here there was – I mean, the court – we don't even have to make an inference from the record. The court said itself, I have no idea what at all means, and yet proceeded to answer the question as though it did understand what the jury was actually asking. When it said – But regardless of what at all meant, it meant some other unnamed conduct. And wouldn't it still be a correct answer that that's up to the jury and not as a matter of law as to whether particular conduct constituted excessive force? I respectfully disagree with that, Your Honor, because you can imagine a scenario in which, as a matter of law, there – as a matter of law, the conduct does not constitute a display of force. For example, if at all meant pieces of the entire incident, then – I mean, and it's clear from the question that the jury was considering the defense version of the incident because it talked about padding, which is something that the government said had not occurred, then according to the defense version of the offense, part of the incident that occurred in that jail cell was that Mr. Azazua involuntarily fell on top of Officer Medina because Medina lost his balance, grabbed at him, and couldn't keep his balance, and they both fell down. If we were to agree with your position on the first issue that we were discussing, that would presumably – and we were to agree that the error was not harmless, that your client would be entitled to a new trial. Yes. So we would never reach the other issues, correct? No. You would never have to reach the other issues. And, of course, our position is that the error is not harmless, and pointing out respectfully that, of course, it's the government's obligation to show that it was harmless and not our burden at this point to show that it was not harmless or that it was harmless. Does that – I'm sorry. Does that make sense? I'm sure we all follow. Okay. All right. Well, unless the Court has further questions, thank you. Thank you. May it please the Court. David Koloff of the United States. Your Honor, I'd like to start by just summarizing our view on the first point. First, I don't believe the four corners rule that the defense counsel is stating is what the law is in the circuit. In addition, Your Honor, just to make clear, the government's position here is that there are two bases for the district court on the first issue to let the evidence in. One, the opening of the door. Second, that it's permissible as a matter under the statute in 608B. We believe both of those are reinforcing. 608 relates, does it not, to bad acts that were not the subject of a prior conviction, correct? No, Your Honor. We believe that's not what the rule says. We believe it doesn't make that, say that in the text of the statute and other circuits, including the Sixth Circuit, Third Circuit, and the Eighth Circuit, have all found that when you have a conviction, the fact of the conviction would be governed here by 609A2, but the underlying instances of misconduct and false statement would then be governed by 608. And so you didn't your entire brief rely on the opening the door argument? You didn't address the 608, 609. It is in there, Your Honor. It's where we close the, where we cite the Hurst case from the Sixth Circuit. It's where we cite the. Show me. Sure, Your Honor. Let me look at page 47. 47? Let me just double check that. No. That's about another topic in time. I'm sorry. Let me just find it. It is. It is on page 41, Your Honor. Again, 44. And again, I would look to what the district court actually did. She said there's two reasons why I'm going to let this in. One, open the door, and I would like to address that in a little further detail because I think that was a proper exercise of the opening the door discretion by the court. And secondly, she said, even if they didn't open the door, and this is a rule we would like the court to find here, that when you have a conviction for dishonesty, specific acts of false statements. Now, remember, Your Honors, these were not acts of violence or crimes that didn't go to truthfulness, do come in under the discretion of the court in the balancing test of 608. If you look through all the cases in this area, including the legislation. But, you know, this section, 608, says other than conviction of crime. Well, it says. It provided in 609. Right. But it says that may not be proved by extrinsic evidence. So the way the courts have read that, and we cited you on commentator there, which is saying, if you're going to use specific acts that underline the conviction, you may not prove them by extrinsic evidence. But you may ask the defendant about them. Exactly. Exactly. That's the distinction we're saying. And the reason there is, you know, for 609, you can bring in the conviction record or you can do these other things. In this case, the district court adhered to that rule such that, for example, when the defendant denied somebody. But in 609, if you're going to impeach, you want to impeach a defendant by a prior felony conviction. Yes, sir. All you can get before the jury is that the defendant was convicted of a particular felony on a certain date. You can't go into the details. I would submit that in this situation, you can, and I would make two points. What does 608, what does 609 say? You can't go, you know, you know why you limit these things? Because once a prior fact finds out that this person has been around the block once before. Right. That's the end of the case. Oh, I agree. That's the end of the case. I agree, Your Honor. That's like, that's just like throwing a bomb right into the defense's position. You're right, Your Honor. When he gets up and he's going to testify, which doesn't happen that often, but so he gets up and he's going to testify. And what his lawyer did here was to take the sting out of it. He asked the question first, and then he asked him about how much time did you spend in jail. I don't know, or what was the sentence? I don't know why. Well, I guess he had to go into that because all this took place in a jail cell. Actually, that's not true, Your Honor. First of all, as to why he asked to ask the question, there's no evidence that one day had anything to do with this incident. It wasn't even established that it was at this same institution. The only inference that could be. Yes, but wouldn't it be, wouldn't the jury be wondering, wait a minute, he's in a jail cell when this whole incident happens, what's he there for? But that's, that, he was there for a violation of supervised release for 90 days. That had nothing to do with. Supervised release from what? Well, that's okay. You can, you can bring up the bank fraud, but the one day sentence had nothing to do with why he was there. The district court found, as a matter of fact, and she said she was surprised they brought it out. It was only brought out to minimize what was the specific issue here, the probative of the truthfulness. This is a very odd case, really. And it's, to me, it's, it's, the government had a very weak case. In fact, I'm really surprised about, since it's a he said, she said kind of situation. But it, it is very odd that this man is convicted and serves only one day, and then he violates the condition of the supervised release. And then he's in for three weeks and can't seem to get out. I mean, that would be circumstances that I would want to put in front of the jury. Well, again, let me start with this. First of all, he was there for three months. Second of all, I can go through why I don't believe it was a very weak case, particularly where the district court here found, based on listening to the defendant's testimony, not that cross-examination we're talking about here, but the rest of her testimony that she found, she was thinking to herself that the government is going to bring a perjury enhancement because his testimony is so implausible. It's a legally false. He might be thinking that, but I still think it's a weak case. Oh. And I was a district court judge, too, and I've read this thing, and I think it's a weak case. It's a he said, she said credibility contest. And, you know, the government got quite a bit of advantage to its position by going in, and he lied about this, and he lied about that, and he lied about this. I mean, at some point, I would think the district court should have stopped the prosecutor, or the prosecutor should have stopped himself from doing that. Well, if I could, I could address what we believe the principles that allowed us to do it and why we limited it to certain specific acts of untruthfulness. And specifically going to Your Honor's question, Judge Pregeson, when you said, if you look at the case law, there are two inferences that come out when you use a prior conviction fax. One is impermissible, and that is that this defendant has been a criminal before and they're a criminal again. Through all the cases, that is the impermissible inference, including the legislative history. But what Congress has said is the permissible inference is that this person has lied and not told the truth before, and all the questions here were limited to specific acts of lack of truth-telling. All the cases on which the defense counsel relies, for the judicial and judicial questions. Yes, sir. Did you file a trial brief? Yes, Your Honor. And did the trial brief discuss these issues? It discussed the 609 issue. At the time, Your Honor, I didn't believe that they were going to go into the facts of the conviction to the one-day sentence. We just raised that we can go, we can bring up the bank fraud. But again, the judge said she was surprised when it came out. I can tell you I was surprised. But again, I only asked. Well, but you can see where he's going to put him on the stand, his defense counsel. He's going to try to get that out front. Not the one-day sentence, Your Honor. That has nothing to do with any fact in the case. The only reason he's going to get it out front, because they're going to wonder how long he's going to be in there. But, Your Honor, that one day had nothing to do with what he was doing in there that time. There's no evidence in the record. Didn't he go beyond that, about the probation violation? Yes, but that was not what the court found opened the door. The one-day sentence was only relevant, and the district court found this, and I submit to you, your question was right. I would say something, that open-the-door rule is, you know, it's abused a lot, you know. If you only open the door, that means we can drive a huge truck right through. Well, but this court has said, Your Honor, and I guess it goes to the first point of the defense counsel in their argument. In the Geese case, it said that the trial court has considerable discretion in determining what lines of cross-examination are reasonably related to the subject matter of the witness's direct testimony. What the district court found, and I believe there's no other inference to draw, is that the one-day reference is only to minimize the impact of the truth, whether this bank fraud conviction goes to truthfulness. Therefore, it was perfectly reasonable. I don't understand that at all, because bank fraud, by definition, involves untruthfulness, and that's why that first set of questions, when you said this involved lying to a bank, right? That's what bank fraud is. That's kind of the nature of the conviction. That seems to me to be quite different from the questions that followed it, where it went into the specifics of this lie There were five particular points, as the district court found. If you look at the briefing, every single one of them were specific, different lies told by the bank. Right. I know that, but what So they're all true calls to truthfulness. Well, they do, but they don't go to what you said initially, which is whether bank fraud involves lying. That you can establish without asking about specific lies. No, I see. It's the nature of the crime. But when you say the one day, what you're saying is that this is not a particularly probative conviction for truthfulness. That's what the district court's analysis was. I understand that, but I don't understand. What I don't understand is what you accomplish that's permissible beyond the first question or two that established the nature of what bank fraud is. In other words, if someone called this crime number 11, the jury wouldn't know what that meant. And so you can say, well, what is crime number 11? You know, so they know how to deal with this. That seems to me to be a different thing. And I guess the question I have for you, though, is if we were to disagree with you about the permissibility of that long series of questions. Right. Would you agree with the proposition that that had a significant, that is, not harmless effect on the jury's assessment of credibility? No, I do believe that it would be harmless. I can go through you and to try to persuade Judge Wardlaw that this was a very strong case from the government's point, even without it. Now, I know, Judge Frankstein, you might say, then, why did you ask the questions? I think the answer to that is, had I known the defendant on cross-examination would testify as he did so implausibly, would change his story and a number of key things in the course of it, which led, again, to the district court to find it obvious that he was committing perjury, then we wouldn't have gone in. Can I ask you another question? Don't you, you tried the case? Yes, Your Honor. Okay, I'm just realizing that. Don't you know that it's impermissible for the prosecutor to ask the defendant to comment on the credibility of the officer? Yes, Your Honor, and I didn't do that. And I will tell you, Your Honor, I've read your opinion in Combs right before this case, and I've read it when it came out. It came from our district, but, and I read, no, and as I read the case, what it says is you cannot, A, say the person's lying, or B, comment on the credibility. Now, I will tell you, one thing I don't think we put on the record clearly, and I'd like a moment to do so. On the direct examination, on four different occasions, the defense counsel in this case said, Officer Medina testified that you hit him. Did you hit him? Officer Medina, he did the same formulation four different times. There was no sort of parade of horribles. But if you look at those cases, your case included, Your Honor, what all the courts say is that the problem with, asking someone if you're lying, the other person's lying, is you're, A, asking them to comment on their credibility, which is a jury determination, and, B, you're asking them to speculate as to what their motives are. So there's two problems. Here, if you just say you heard that testimony, did that fact happen? Well, there's no asking to get into the mind of the other witness or to ask whether the witness is misperceiving events or is willfully lying or anything like that. So, again, if you look through all those cases, they make a. Well, but if that fact, if he says it didn't happen, then he's calling Medina a liar. No, Your Honor. There's a whole bunch of things. We cited to you a whole bunch of cases where you can say, you know, a person can misperceive information. They might not know, might not have seen the facts right. They might just be misremembering. There's just the two of them in one room. And this is, it's not. No, no, there was, well, there were other corroborating facts. And he, Officer Medina, also directly, I mean, excuse me, the defendant here, directly contradicted other people's testimony and came into the room and saw him pinned up against the wall, for example. He said that didn't happen. But just on your point about the second issue, Your Honor, well, first, I just want the Court to just have the record citations where the defense counsel asked these exact same framed questions about even more material issues. And that was at ER 488 and ER 499. But again, Your Honor, when, you know, we've cited to you a number of cases. Well, he had all that contradictory stuff, see. So all you had to do in argument is point that out and ask the jury to vote. Well, yeah, that's fine. And they'll believe. Well, it's okay to point out differences between testimony. Yeah, but you do that in argument. Well, you can, no, he did it in his direct examination. And it's okay to point, as the First Circuit said, to point out the objective differences in testimony. What, as the Court has noted, the problematic issue in the Combs case and the Moreland case and all the cases in this circuit is when you ask them to say, are you a liar? Why is he lying? The defense. What you did is pretty close to that. No, Your Honor, I would submit. Yeah, but why even take a chance on that? Well, because you're, well, again, because. Well, you think you were going to lose this case? No, Your Honor, it's permissible. I read the rule. And what I was trying to do is to say, look, you heard this whole description of what was happening. Did that happen? And he said no. Just like they had said, Officer Medina said he hit you. Did he hit you? Miss Medina said he spit on you. Did he spit on you? And he said no. It's just a way to cut through all the small little parts of it. And again, it was just one question. And I never said, did he lie? Why did Officer Medina make up the story? That's the impermissible conduct. You have to look at, again, what the purpose of the rule is. And throughout all the cases we cite to you, they say, even if I just said, was he mistaken? Well, it's a needless question because the defendant testified one way, Medina testified another way. You don't need to ask Medina to talk about whether the, I mean, the defendant's talking about whether Medina's version was correct or incorrect. I didn't. I didn't ask whether his version was correct. I didn't. It was a necessary question, Your Honor, because if you look at, if you read through the defendant's initial story, it was very sparse on details. It wasn't, it was surprising to me, for example, that he would deny even talking to Officer Medina before the incident. That somehow out of the blue, Officer Medina came into his cell with a big frown on his face. And by the way, he then denies that anyone ever brought him out of the cell. That there was even an emergency alarm sounded. So I wanted to get the details of what was his story because it was, it was implausible, not just with respect to him and Officer Medina, but all the surrounding facts. So I just said, well, you heard that story, which was, by the way, in the log, that they had a discussion about clothing and, or that they had this thing about the patent. And he said, no, no, I never spoke to him about that before I came into my cell. So I was asking, Officer Medina had talked about a lot of facts, and he had spoken with the defendant. And so it was a necessary question to understand what this defendant's story, in fact, was. Because his direct testimony was very sparse. And if, when you start to go into his story and compare it to the facts, not just he said, she said. But he disagreed with every single witness on very basic things. He would be, he. You know what, just to, your argument is very persuasive. I don't think you needed to ask that question to make this argument, which is quite good. Well, no, I understand. But I just, I do hope if you look at the question and you look at the case law. I will. I'm going to look back at the case. But, you know, you, you know, that's kind of a little bit dangerous territory. So the smart thing to do is just stay away from it. Your Honor, I. When I was on the Superior Court, I had this, this older DA. He looked like Edward G. Robinson. And it would take him long. We, I used to handle maybe 120 felonies every month. And he never lost a trial. He'd, he'd get the witness, the defendant up there. He'd ask them a few questions. You could, you could start to hear the limb crack, huh? He didn't start pushing them to have, watch them fall to the ground. He'd just look at them. He'd look at the jury. He'd look at me like, anything else you want? He'd sit down. Take him a few minutes to do that. You know, the jury is not stupid. He, he's denying all these things. You've got the, you've got the, the corrections officer there. You've even got some business records and all that. So it's best just to, just to walk away. And, you know, like, you say, well, were you lying then or were you lying now? I've seen, I've seen cases just go down the tube with that question asked. It's just not smart to do that. Your Honor, I understand that. I've, I've heard you. And then, and then the judge wasn't even aware of these two sections and how they interact. Well, I will submit to you that this Court has never talked about how these two sections interact. I would submit to you the Sixth Circuit's Hertz case, which I would really commit to you to take a look at. Because that's a case where it, it made this distinction I'm making. But let me get to Your Honor's larger point. I've heard Your Honor mention this about not asking for too much. But in this case, Your Honor, I read Rule 608. I read Judge Ward's Law's opinion in Combs. I believed I knew where the line was. Now, I'm not saying it was a perfect cross-examination. And I will concede to you two areas where in my cross-examination, and when I look now at the cold record, I would like to have back. And I'll, I'll just highlight them to the Court. One is when I was talking about the bank fraud and I mentioned the, the name of the victim. There was no reason to mention that. Now, he denied remembering what the name of the victim was. The second was when I asked him about it when he was, when he lied to, when he was arrested and gave a false name to the police. I phrased that in the terms of, didn't you admit that to the probation officer? Because he, because he denied several of the things. And I was pointing out that these were all facts that he had specifically admitted that were untruthful. The, you know, there was a lot of facts that I didn't go into. I didn't go into the fact that he had seven aliases. I didn't go into the fact of the amount of restitution. I didn't go into the fact that he was a fugitive for five years. I didn't go into the fact that when we talk about why was there a one-day sentence? Well, you might, you might have another chance. But for example, the one-day restitution, if you look in the probation report, that was recommended, so the one-day sentence was so he could pay restitution. But he didn't. Now the restitution was what formed the basis for the supervised release. Correct, Your Honor. So I could have gone into that. But what I was limiting myself to was 608, which is only acts of untruthfulness. And to go to Your Honor's first point as to, you know, this can kill the defendant. Well, but, you know, I think that the point was made earlier that his statement about the sentence and the nature of the crime does, it would seem to me, just speaking for myself, at least open up the area of cross-examination about the sentence. Although you only received one day, were you aware of the statutory maximum for this crime as acts? But how would that go to truthfulness, Your Honor? I mean, the whole thing. Well, it doesn't necessarily, but then that bank fraud is a, is a, an untruthfulness crime is obviously the case. And it can be argued that way. But, Your Honor, the whole point of the opening the door, and this is what I get. There are two, one impermissible thing that you can't do here is say you've committed crimes before, you're a criminal again. But what Congress has said you can do, what the kind of cross-examination that is allowed, is you have lied before, you've made specific false statements. And I submit to you that none of the cases relied on by defendants are false statements underlying a crime of dishonesty. They, the Congress has said those things the jury should hear, because those are probable, probative to the issue of defendant's truthfulness. As the district court said, if I had been asking the details of a sexual assault crime, of course it's, it's. No, but what, if you had stopped after those first three questions that defined bank fraud, basically, that, you know, you lied to a bank to get money, that was the basic point. I don't see why you couldn't have had a field day, an argument to the jury just based on that. Here's somebody who lied to get money, and why not? What more did you need? Again, what you can, there's no, it's the same reason why is the one, it's responding to the one-day issue. Moreover, the district court is given wide discretion into how many questions are probative or truthfulness. If you look at the Hearst case in the Sixth Circuit, what it says is, and in that case, they went even more. Well, that's in part, part of the rationales, I understand it. And obviously, we'll all go back and read these things again. But I understood that part of the rationale there was that jurors wouldn't necessarily understand what subordination of perjury is. That's like crime number 11. So what, in order to establish with the jury that that had a meaning that was dishonest, questioning was allowed. And here, there was no objection made until you got past the questions that were similar to those in Hearst. That is, okay, this bank fraud is a crime in which you lie to the bank to get money. And that's, it seems to me, the parallel. But beyond that, I guess I don't see Hearst as just saying, well, you can just say whatever you want after that. Roberts. Two things about Hearst. One, it specifically says when it's admitted under 608, when it's a 609 crime, then you look to 608B. That's the rule we're asking the Court to follow.  First of all, the Court said, you can go into some of the facts of conviction of the witnesses to evaluate the significance of the prior conviction to the witness's credibility. There, it gave the name of the people involved, the amount of the bribe, and also the fact that the proposed bribe even involved bank robbery, a crime that had nothing to do with truthfulness. And it gave dates and times, et cetera. So that Court, in that case, Hearst said these were all probative to get a sense. And again, it's in the discretion of the district court. And that's what we're saying that the district court did here. The district court did not allow me to go into facts that had nothing to do with truthfulness, as they did, for example, in Hearst or in the Jackson case, only to go into the truthfulness. And remember, the issue here, the Court is correct in defining what the minimization was, was as to the relevance of this conviction to truthfulness. And each act of untruthfulness, as Congress has found, is a permissible thing for this jury to find. And that's why, again, there were limiting principles to my questioning. There was limiting principles to what the district court found. Well, you can't go out, you know, and you've got a witness on the stand. You can't bring in 10 people that this witness cheated or lied to during the witness's life. You can't say, well, we think he's a liar. Well, that would be character evidence. But if there was – and first of all, all of it would be to the district court's value versus – which the district court specifically did here versus prejudicial fact. If we bring in 10 people, any district judge is going to say this is too much, these are maybe too remote or things like that. But here the district judge said, first of all, you've tried to minimize the impact of the bank fraud conviction, so I'm going to let some questions in about your specific lies into them. There's no doctrine of the four corners of the question. And I would point out to you, if the Court wants, I can go through each of the cases that the defense counsel has referenced and show why they're a different situation to the one here. For example, Judge Wheel's case, I think it's the Taylor case. But I would also just – I'm sorry. I would point the Court on the opening the door issue, for example, to the East case, the Beltran case where we say is it a potential for misleading. And there's also, for example, the Douglas case which is pointed out in the briefs, the reply brief at page 38. That's a case where the defendant argued I'd never been interrogated like this before. And the Court allowed them to then go into details of all his past arrests, even though those didn't involve actual interrogation, but just gave the idea that he may have been interrogated before. So the district court gets to sort of figure out what the level of generality of the issue is. And here the district court's level of generality was reasonable. She said this – that comment about one day, it had nothing to do with this crime. It had nothing to do with the defendant's experience. There were no development in the record of that. It was only to show that this was not particularly probative of truthfulness. And therefore – Kennedy. But did you object when he asked the question about one day? No. He's allowed to go into it, Your Honor. I mean, he wants to try to – and I will tell you, I did ask defense counsel before – this is not in the record, but I did say, are we going to have some kind of stipulation as to why he's here? He said he didn't want one. He wanted to go in. He wanted to tell the jury exactly what had happened. I did not expect him to go into the one-day thing. But again, I would think, you know, to go to the first point – I guess I can see. I don't know if this does get retried, whether he would bring it up again. But I could see why he would do it in the sense that bank fraud is a pretty serious crime, and it could – just saying bank fraud alone could leave in the juror's mind a whole parade of horribles that, you know, saying one day would clarify. Well, how would it clarify? And then you could bring out – and it could have been 30 years, and you didn't fulfill your whole sentence. Well, but again, it could have been 30 years. How does that – how does the jury figure out the only question that really should be permitted is, is this probative of this truthfulness? What the district court allowed was actually what Congress wants, is only facts that relate to truthfulness. If you're talking about statutory crimes or it was 30 years or you did this, you know, it's got nothing to do with the point that Congress has allowed in 608 and the reason why this Court and other courts have created this judicially crafted rule on top of 609, which is only the facts of conviction. Well, certainly, I can't think of any theory under which you would be precluded from bringing out what are the elements of the crime if they're not readily apparent to somebody like what is bank fraud, which you did without objection. The objection started when you went beyond that, as I recall. I would point out, Your Honor, there are a number of cases where, including, you know, there's one in the Second Circuit where they don't even allow you – I mean, the rule as stated, that they're relying on here, doesn't allow the length of the sentence because courts have said the length of the sentence, you know – and again, remember, this would go both ways. This would be for a government witness, too. If the government, you know, brought out the one day, then, you know, how is that prohibitive of truthfulness? Once you do, if you're trying to minimize truthfulness, you can go into that. So, I mean, there are a number of cases which say you can't even mention the length of punishment because it's not relevant to the issue of truthfulness. Now, once they try to use – and the words in this Court's cases are selectively picking the facts that they want to pick. They can't just, you know, pick – as the courts, why do they pick the one day? Because it shows that, well, he wasn't really a big liar. You know, it's not – But it was accurate. Yes. But much of the times when it opens a door, it's accurate. For example, there – in the Douglas case, he accurately testified, but what is the potentially misleading effect? The misleading effect is that it shows that it was a – it was not probative of his truthfulness. The accuracy is often correct, but the Court still says, well, you've opened the door to this issue. As to the specific cases, I would like a moment to distinguish – No. No? No? No. I mean, we've read the cases. It's ten minutes. One slide. I'm sorry. I would just say that in none of these cases is there some kind of four corners rule. The correct rule that the Court – it's a district court's discretion. Who hears the testimony, who sees the – sees how it comes out, to determine what's the level of generality for whether it opens the door. And again, I would emphasize here the district court also was permitted under 608 and 609. Any other questions? Well, we open the door and we give you 11 minutes and 59 seconds. Thank you. We appreciate the argument. Go ahead. Oh, you're over two. Go ahead. Your Honors, with respect to the 608 issue, since the government's claim – the government's claim is that the question about how long the sentence was to which, as the Court has noted, Ms. Dracozua responded truthfully, opened the door. But it also claims, if I'm understanding its argument, that under 608 it could have gone into the specific facts underlying the defense – underlying the offense no matter what, because its argument is not nuanced or non-categorical in any way. It appears to be a completely categorical argument that you can get into the facts of an underlying offense under 608, even though you can only talk about the conviction under 609. And as the Court has pointed out, and as our position is, that would turn 609 into an absolute nullity. Also, I would point out that the government's cases, as we discussed in our reply brief, don't actually, in our view, support the government's position, with Hurst in particular being a case in which the government was allowed to bring out in one sentence what the defendant had pledged to, and in Jackson – Jackson involved a situation in which there was no criminal charge at all. As to the harmlessness issue, the government conceded on page 44 of its brief that the evidence was not overwhelming. I'm not going to beat that horse any longer in view of what Judge Wardlaw has said, but I did want to point that part out. And, of course, as the Court knows from the Gaston case, that asking a witness whether another witness is mistaken is also reversible error. As to what Mr. Azazua testified to, he didn't deny having heard the – he didn't deny that there was an emergency alarm, only saying that he hadn't heard it, which wouldn't be surprising since he was inside his cell. And the alarm, as I understand the testimony from other witnesses, resounds through the common areas of the building. And he did talk about how Officer Medina had been frowning to the FBI, which was long before he was actually charged in the case. It was within a few days, I believe, at least a couple of weeks after the incident occurred. Finally, as to the government's argument that it was allowed to bring in all this information about the underlying offense because it was probative of Mr. Azazua's truthfulness, those cases only apply when the defendant has told a slanted version of the truth or brought out circumstances of the offense that would tend to show that it wasn't as bad as the offense seems to be. I've never been in – Can I ask you a question? So what is the legitimate rationale for asking about the sentence? Well, the legitimate rationale for asking about the sentence is to correctly set out the sequence of events to the jury. And if – You could have set out the sequence without mentioning any length of time, right? It would have been possible. I can see that. But if that opened the door, it didn't open the door to anything about truthfulness. It opened – or anything about the facts of the underlying offense. What it opened the door to was that same territory. Okay, your sentence was a day, but it could have been a whole lot longer, and you actually did commit a bank fraud, didn't you? And, I mean, I think that the – there wasn't any point to the government's further questioning except to say to the jury, this man is a lying liar, which it said – which the government said in argument is a lying liar who's contriving the story for you right up on the stand as he's testifying. I mean, the only purpose of that very prolonged cross-examination in view of the overall – You know, you keep that up, we might make a prosecutor out of you. It would take more than that, Your Honor, but thanks. But I think I'll conclude here before it happens. Thank you, Your Honor. All right. Thank you very much for the argument. It was very enlightening, and we'll give the matter deep thought. We're recessing until 8 – 9.30 a.m. tomorrow morning.
judges: Pregerson, Graber, Wardlaw